IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *   CRIMINAL NO. 16-cr-00259-WS |
| | * |
| MARANGELY CONDE | * |

## PLEA AGREEMENT

The defendant, **MARANGELY CONDE**, represented by her counsel, and the United States of America have reached a plea agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

### RIGHTS OF THE DEFENDANT

1. The defendant understands her rights as follows:

    a. To be represented by an attorney;

    b. To plead not guilty;

    c. To have a trial by an impartial jury;

    d. To confront and cross-examine witnesses and to call witnesses and produce other evidence in her defense; and

    e. To not be compelled to incriminate herself.

### WAIVER OF RIGHTS AND PLEA OF GUILTY

2. The defendant waives rights b through e, listed above, and pleads guilty to Count Two of the indictment, charging a violation of Title 21, United States Code, Section 963, Conspiracy to Import Methylphenidate Hydrochloride (Ritalin).

3. The defendant understands that the statements she makes under oath in the plea of guilty must be completely truthful and that she can be prosecuted for making false

Rev. 8/13

statements or perjury, or receive a perjury enhancement at sentencing, for any false statements she makes intentionally in this plea of guilty.

4. The defendant expects the Court to rely upon her statements here and her response to any questions that she may be asked during the guilty plea hearing.

5. The defendant is not under the influence of alcohol, drugs, or narcotics. She is certain that she is in full possession of her senses and is mentally competent to understand this Plea Agreement and the guilty plea hearing which will follow.

6. The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. She has discussed the facts of the case with her attorney, and her attorney has explained to the defendant the essential legal elements of the criminal charge which has been brought against her. The defendant's attorney has also explained to the defendant her understanding of the United States' evidence and the law as it relates to the facts of her offense.

7. The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charge beyond a reasonable doubt. The defendant and her counsel have discussed possible defenses to the charge. The defendant believes that her attorney has represented her faithfully, skillfully, and diligently, and she is completely satisfied with the legal advice of her attorney.

8. Defendant recognizes that pleading guilty may have consequences with respect to immigration status if she is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which she is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no

one, including her attorney or the district court, can predict to a certainty the effect of her conviction on her immigration status. Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is her automatic removal from the United States.

9. A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that the Factual Resume is true and correct. Alterations to the Plea Agreement or Factual Resume initialed only by the defendant and her counsel are not part of this agreement and are not agreed to by the United States.

10. This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations, apart from those representations set forth in this Plea Agreement. There have been no promises from anyone as to the particular sentence that the Court will impose. The defendant is pleading guilty because she is guilty.

11. The defendant also knowingly and voluntarily waives all rights, whether asserted directly or through a representative, to receive from the United States after sentencing any further records, reports, or documents pertaining to the investigation or prosecution of this matter. This waiver includes, but is not limited to, rights under the Freedom of Information Act and the Privacy Act of 1974.

## PENALTIES

12.  The maximum penalty the Court could impose as to Count Two of the Indictment is:

   a.  20 years imprisonment;

   b.  A fine not to exceed $1,000,000.00;

   c.  A term of supervised release of 5 years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, she could be imprisoned for the entire term of supervised release;

   d.  A mandatory special assessment of $100.00; and

   e.  Such restitution as may be ordered by the Court.

## SENTENCING

13.  The Court will impose the sentence in this case. The United States Sentencing Guidelines are advisory and do not bind the Court. The defendant has reviewed the application of the Guidelines with her attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. The defendant understands that she will not be allowed to withdraw her guilty plea if the advisory guideline range is higher than expected, or if the Court departs or varies from the advisory guideline range.

14.  The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within

4

any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

15. The United States will provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

16. Both the defendant and the United States are free to allocute fully at the time of sentencing.

17. The defendant agrees to tender $100.00 to the U.S. District Court Clerk in satisfaction of the mandatory special assessment in this case. The United States reserves the right to withdraw any favorable recommendations it may agree to within this document if the defendant fails to pay the special assessment prior to or at the time of her sentencing.

## RESTITUTION

18. Pursuant to 18 U.S.C. §§ 3556 and 3663(A), restitution is mandatory. The defendant agrees to make full restitution in an amount to be determined by the Court at sentencing.

## FINANCIAL OBLIGATIONS

19. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court. In order to facilitate the collection of financial

obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

## FORFEITURE

20. The defendant agrees to confess the forfeiture to the United States of all properties which represent proceeds of his criminal activities or which facilitated any aspect of these illegal activities.

## UNITED STATES' OBLIGATIONS

21. The United States will not bring any additional charges against the defendant related to the facts underlying the Indictment and will move to dismiss all remaining counts once sentence is imposed, if any. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

22. The United States will recommend to the Court that the defendant be sentenced to probation for a time period to be determined by the Court.

## APPLICATION OF USSG § 5K1.1 AND/OR FED. R. CRIM. P. 35

23. The defendant understands and agrees that she has no right to cooperate, and that the decision whether to allow her to cooperate is reserved solely to the United States in the exercise of its discretion. If the United States agrees to allow the defendant to cooperate, and if the defendant agrees to cooperate, the following terms and conditions apply:

a. The defendant shall fully, completely, and truthfully respond to all questions put to her by law enforcement authorities regarding the underlying facts of the offense(s) with which she is charged, as well as the underlying facts of any criminal offense(s), state or federal, of which she has information or knowledge.

b. The defendant acknowledges that he understands that she shall provide truthful and complete information regarding any offense about which she has knowledge or information regardless of whether law enforcement authorities question her specifically about any such offense. This provision requires the defendant to divulge all information available to her even when law enforcement authorities do not know about the defendant's involvement, knowledge or information relating to any particular offense. This requirement extends to any and all persons about whom the defendant has such knowledge or information.

c. The defendant agrees to cooperate completely with all law enforcement authorities in any matters to which her cooperation may be deemed relevant by any law enforcement authority. The defendant agrees to fully comply with all instructions from law enforcement authorities regarding the specific assistance she shall provide. This includes, but is not limited to, consenting to monitored and/or recorded telephone conversations, participating in undercover operations, testifying completely and truthfully before any grand jury, at any pre-trial proceeding, during any trial, and any post-trial proceeding.

d. If the United States deems it necessary, the defendant may be required to take a polygraph examination(s) which will be administered by a government polygrapher. The defendant agrees that the results of any polygraph examination may be used by the United States in its evaluation of whether there has been substantial assistance, and are admissible at sentencing to rebut an assertion by the defendant of bad faith or unconstitutional motive on the part of the United States.

e. The defendant agrees to turn over to the United States any and all documents, tapes and other tangible objects which are in her possession or under her control and which are relevant to her participation in and knowledge of criminal activities, regardless of whether it relates to the charged offense. This obligation is a continuing one and includes materials that the defendant may acquire, obtain or have access to after the execution of this agreement.

f. The defendant also agrees to identify the assets of any other person which were obtained through or facilitated the defendant's illegal activities or the illegal activities of another.

g. If the defendant provides full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal offense, a decision specifically reserved by the United States in the exercise of its sole discretion, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United

States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States deems applicable. The United States specifically reserves the right to make the decision relating to the extent of any such departure request made under this agreement based upon its evaluation of the nature and extent of the defendant's cooperation. The defendant understands that the United States will make no representation or promise with regard to the exact amount of reduction, if any, the United States might make in the event that it determines that the defendant has provided substantial assistance. The defendant understands that a mere interview with law enforcement authorities does not constitute substantial assistance. The defendant also understands that, should she provide untruthful information to the United States at any time, or fail to disclose material facts to the United States at any time, or commits a new criminal offense, the United States will not make a motion for downward departure. If the defendant's effort to cooperate with the United States does not amount to substantial assistance as determined solely by the United States, the United States agrees to recommend that the defendant receive a sentence at the low end of the advisory guideline range.

h. The United States and the defendant agree that any breach of this agreement by the defendant, including but not limited to committing a new offense, failing to cooperate, intentionally withholding information, giving false information, committing perjury, failing to identify assets obtained by her from his illegal activities or obtained by others associated with her

9

or of which she has knowledge, refusing to take a polygraph examination, failing a polygraph examination, or refusing to testify before the grand jury or at any judicial proceeding, would:

    (1) permit the United States to reinstate and proceed with prosecution on any other charges arising from the matters underlying the Indictment; and

    (2) permit the United States to initiate and proceed with the prosecution on any other charges arising from a breach of this agreement. The United States will not be limited, in any respect, in the use it may make against the defendant of any information provided by the defendant during her breached cooperation. Such breach will constitute a waiver of any claim the defendant could make under the United States Constitution, the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, or any statute or case law by which the defendant seeks to suppress the use of such information or any evidence derived from such information.

i. Nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement, including perjury, false declaration, false statement, and obstruction of justice, should the defendant commit any of these offenses during his cooperation. The defendant acknowledges and agrees that the information

that she discloses to the United States pursuant to this agreement may be used against her in any such prosecution.

j. The United States and the defendant agree that the defendant will continue her cooperation even after she is sentenced in the instant matter. Her failure to continue her cooperation will constitute a breach of this agreement, and the defendant agrees that under such conditions, the United States will be free to reinstate the charges and the prosecution of the charges in the Indictment, which are to be dismissed in accordance with this agreement. Under these circumstances, the defendant expressly waives any rights she may have under the statute of limitations and the speedy trial provisions.

## LIMITED WAIVER OF RIGHT TO APPEAL AND WAIVER OF COLLATERAL ATTACK

24. As part of the bargained-for exchange represented in this plea agreement, and subject to the limited exceptions below, the defendant knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Accordingly, the defendant will not challenge her guilty plea, conviction, or sentence in any district court or appellate court proceedings.

   a. **EXCEPTIONS.** The defendant reserves the right to timely file a direct appeal challenging:

      (1) any sentence imposed in excess of the statutory maximum;

11

        (2)    any sentence which constitutes an upward departure or variance from the advisory guideline range.

The defendant also reserves the right to claim ineffective assistance of counsel in a direct appeal or § 2255 motion.

25. If the United States files a notice of appeal and such appeal is authorized by the Solicitor General, the defendant is released from the appellate waiver.

26. The defendant further reserves the right to timely move the district court for an amended sentence under 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the sentence.

27. If the defendant receives a sentence within or below the advisory guideline range, this plea agreement shall serve as the defendant's express directive to defense counsel to timely file a "Notice of Non-Appeal" following sentencing, signed by the defendant.

## **VIOLATION OF AGREEMENT**

28. The defendant understands that if she breaches any provision of this Plea Agreement, the United States will be free from any obligations imposed by this agreement, but all provisions of the agreement remain enforceable against the defendant. In the exercise of its discretion, the United States will be free to prosecute the defendant on any charges of which it has knowledge. In such event, the defendant agrees not to assert any objections to prosecution that she might have under the Sixth Amendment and/or Speedy Trial Act.

29. In addition, if the defendant is released from detention prior to sentencing, she understands that the United States will no longer be bound by this agreement if she violates any condition of her release prior to sentencing or prior to serving her sentence after it is imposed.

## ENTIRETY OF AGREEMENT

30. This document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all the parties.

Respectfully submitted,

STEVE BUTLER
ACTING UNITED STATES ATTORNEY

Date: March 23, 2017

Lawrence J. Bullard
Assistant United States Attorney

Date: 3/23/17

Vicki M. Davis
Assistant United States Attorney
Chief, Criminal Division

13

I have consulted with my counsel and fully understand all my rights with respect to the offense charged in the Indictment pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt.

Date: 3/24/17

Marangely Conde
Defendant

I am the attorney for the defendant. I have fully explained her rights to her with respect to the offense(s) charged in the Indictment in this matter. I have carefully reviewed every part of this Plea Agreement with her. To my knowledge, her decision to enter into this agreement is an informed and voluntary one. I have carefully reviewed the Factual Resume, incorporated herein, with the defendant and to my knowledge, her decision to stipulate to the facts is an informed, intelligent and voluntary one.

Date: 3/24/17

Christopher Knight
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | *  CRIMINAL NO. 16-cr-00259-WS |
| | * |
| MARANGELY CONDE | * |

## FACTUAL RESUME

The defendant, **MARANGELY CONDE**, admits the allegations of Count Two of the Indictment.

## ELEMENTS OF THE OFFENSE

**MARANGELY CONDE** understands that in order to prove a violation of Title 21, United States Code, Section 963, as charged in Count Two of the Indictment, the United States must prove:

1. That two or more persons in some way or manner agreed or came to a mutual understanding to import Methylphenidate (Ritalin) into the United States;

2. That the defendant, knew of the unlawful purpose of the plan, and knowingly and willfully joined, and became a member of such conspiracy.

3. The object of the unlawful plan was to import Methylphenidate (Ritalin) into the United States.

## OFFENSE CONDUCT

Defendant, **MARANGELY CONDE**, admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case. This statement of facts is provided solely to assist the Court in determining whether a factual basis exists for **MARANGELY CONDE's** plea of guilty. The statement of facts does not contain each and

1

every fact known to the defendant, **MARANGELY CONDE** and to the United States concerning the defendant's involvement in the charges set forth in the plea agreement.

On October 14, 2015, Homeland Security Investigations and the United States Postal Inspection Service began an investigation into an organization that was smuggling Methylphenidate (Ritalin) pills in the United States from Mexico. Methylphenidate (Ritalin) is a scheduled II controlled substance. Employees from the Bay St. Louis United States Post Office contacted United States Postal Inspectors regarding approximately ten parcels originating from Nogales, Arizona that were being sent to 609 Barlow Drive Waveland, Mississippi. During the investigation, the United States Postal Inspectors discovered that each of the packages sent from Arizona were processed in the usual course of business by the United States Post Office in Mobile, Alabama prior to reaching their final destination in Mississippi.

It was also revealed during the investigation that co-defendants, Frank Peter Salamone and his wife Heather Turner Erwin aka Heather Turner Salamone resided at 609 Barlow Drive Waveland, Mississippi. United States Postal Inspectors were advised by employees from the Bay St. Louis United States Post Office that the co-defendant, Heather Turner Erwin aka Heather Turner Salamone would usually come to the post office to pick up the packages. The United States Postal Inspectors reviewed postal records and discovered that the co-defendant, Heather Turner Erwin aka Heather Turner Salamone had personally signed for approximately six out of the ten packages that had originated from Arizona.

The United States Postal Inspectors were notified by the employees from the Bay St. Louis Post Office that on the date of incident, a 12 x 9 paper express mail envelope addressed to the co-defendant, Heather Turner Erwin aka Heather Turner Salamone was delivered to the Bay St. Louis Post Office, but the parcel had accidently opened during the processing of the mail.

The employees from the Bay St. Louis Post Office observed in plain view a plastic wrapped bundle of white pills. The parcel was sent to the Inspection Service Office in Mobile, Alabama for further investigation. Approximately, 536 Methylphenidate Hydrochloride (Ritalin) pills were found in the parcel. It was learned during the investigation that the Methylphenidate Hydrochloride (Ritalin) pills had a street value of $5,360.00. The pills were tested and found to contain 9mg of Methylphenidate Hydrochloride (Ritalin) in each pill. United States Postal Inspectors contacted the co-defendant, Heather Turner Erwin aka, Heather Turner Salamone regarding the package since the package was addressed to her. The co-defendant, Heather Turner Erwin aka Heather Turner Salamone was interviewed by the U.S. postal inspectors and during the interview, the co-defendant, Heather Turner Erwin aka Heather Turner Salamone admitted to the United States Postal Inspectors that she was expecting a package from Arizona that a friend had mailed to her. The co-defendant, Heather Turner Erwin aka Heather Turner Salamone stated that the parcel contained her medicine.

The co-defendant, Heather Turner Erwin aka Heather Turner Salamone admitted that her friend crosses the border into Mexico to purchase the medication and then her friend sends the medication to her in Mississippi through the United States mail. During the investigation, it was revealed that the defendant, **MARANGELY CONDE**, was the friend who would go to Mexico to obtain the Methylphenidate Hydrochloride (Ritalin) and she was the friend who mailed the subject package.

On April 26, 2016, authorities interviewed the defendant, **MARANGELY CONDE**. The defendant, **MARANGELY CONDE** admitted to law enforcement that she has known her co-defendants, Frank Peter Salamone, and Heather Turner Erwin aka Heather Turner Salamone for approximately five years. The defendant, **MARANGELY CONDE** admits that the, co-

defendant, Heather Turner Erwin aka Heather Turner Salamone asked her to go to a pharmacy in Mexico to pick up the narcotics. The defendant, **MARANGELY CONDE** admitted that co-defendants, Frank Peter Salamone and Heather Turner Erwin aka Heather Turner Salamone would wire money through Walmart to her and she would pick up the money and go to the pharmacy in Mexico. The defendant, **MARANGELY CONDE** received approximately $90.00 per trip for herself to pick up the Methylphenidate Hydrochloride (Ritalin).

The defendant, **MARANGELY CONDE** stated that she had picked up medicine for co-defendants, Heather Turner Erwin aka Heather Turner Salamone and Frank Salamone on approximately 20 occasions. Once the defendant, **MARANGELY CONDE** picked up the Methylphenidate Hydrochloride (Ritalin) she would cross back over the border into the United States and mail the Methylphenidate Hydrochloride (Ritalin) to the co-defendant, Heather Turner Erwin aka Heather Turner Salamone via United States mail to her address in Mississippi.

Frank Peter Salamone had wired approximately $9,000.00 to the defendant, **MARANGELY CONDE**, and co-defendant, Heather Turner Erwin aka Heather Turner Salamone had wired approximately $3,000.00 to **MARANGELY CONDE** for purposes of purchasing the Methylphenidate Hydrochloride (Ritalin). The defendant admits that all of this money was used by her to purchase Methylphenidate Hydrochloride (Ritalin) except for $250.00. The co-defendant Frank Peter Salamone never paid **MARANGELY CONDE** anything for saving his life as falsely alleged by Frank Peter Salamone.

The co-defendant, Frank Peter Salamone would go to Walmart and swipe his debit card and then send the money via Walmart to co-defendant, Marangely Conde. The co-defendant, Frank Peter Salamone admitted that he knew it was illegal to smuggle the Methylphenidate Hydrochloride (Ritalin) pills across the border and then to mail them through the postal service.

4

On March 5, 2016, the DEA laboratory results confirmed that the 536 pills found on the date of incident were in fact positive for Methylphenidate Hydrochloride (Ritalin). On October 12, 2016, further tests were conducted on the pills by the United States Food and Drug Administration (FDA) to determine the amount of Methylphenidate Hydrochloride (Ritalin) that was contained in each pill. These test results confirmed that the pills contained approximately 9mg of Methylphenidate Hydrochloride (Ritalin) in each pill. The defendant, **MARANGELY CONDE** knew it was illegal to import Methylphenidate Hydrochloride (Ritalin) in this manner and she knew the amounts of Methylphenidate Hydrochloride (Ritalin) she was smuggling into the United States was far in excess of a legitimate prescribed amount. The defendant, **MARANGELY CONDE** was paid by co-defendants, Frank Peter Salamone and Heather Turner Erwin aka Heather Turner Salamone to illegally smuggle the Methylphenidate Hydrochloride (Ritalin) into the United States and the defendant, **MARANGELY CONDE** knowingly and willfully conspired with co-defendants, Frank Peter Salamone and Heather Turner Erwin aka Heather Turner Salamone to smuggle Methylphenidate Hydrochloride (Ritalin) into the United States.

The United States and the defendant, **MARANGELY CONDE** agree and recommend to the Court that the defendant be held accountable for the possession of 536 pills containing 9mg Methylphenidate Hydrochloride (Ritalin) each for purposes of relevant conduct.

Respectfully submitted,

AGREED TO AND SIGNED.

STEVE BUTLER
ACTING UNITED STATES ATTORNEY

Date: March 23, 2017

Lawrence J. Bullard
Assistant United States Attorney

Date: 3/24/17

Vicki M. Davis
Assistant United States Attorney
Chief, Criminal Division

Date: X 3/24/17

X Marangely Conde
Marangely Conde
Defendant

Date: 3/24/17

Christopher Knight
Attorney for Defendant

6